UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOE FLORES, an individual, and
CONSUELO FLORES, as court-appointed
conservator and guardian of JOE FLORES,
as individuals and on behalf of all others
similarly situated,

        Plaintiffs,

vs.                                                  Case No. 11-12119

UNITED STATES OF AMERICA,                  HON. AVERN COHN
UNITED STATES DEPARTMENT OF
DEFENSE, TRICARE MANAGEMENT
ACTIVITY, and ROBERT M. GATES,

        Defendants.
_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 10)

### I. Introduction

This is a case challenging a decision by TRICARE Management Activity

(TRICARE), a managed health care program for members of the uniformed services,

retirees, and their dependents.  Plaintiffs Joe Flores (Flores) and Consuelo Flores,

Flores's daughter, say that TRICARE has unlawfully stopped providing coverage to

Flores on the grounds that the care provided is "custodial" and not "skilled nursing care."

As will be explained, Flores is a quadriplegic and suffers from "Locked-In Syndrome"

which renders him paralyzed in all parts of his body expect for eye and eyelid

movement.  Plaintiffs are suing on behalf of Flores and on behalf of all others similarly

situated to Flores.[1]  Plaintiffs seek relief under the Administrative Procedures Act (APA), 5 U.S.C. § 702, as being aggrieved by an agency action.

Before the Court is defendants, the United States, United States Department of Defense, TRICARE Management Activity, and Secretary Robert M. Gates (collectively "the government") motion to dismiss on the grounds that plaintiffs lack standing.  For the reasons that follow, the motion will be denied.

## II.  Background

The following information is taken from the complaint, the parties' papers, including exhibits.

## A.  Flores' Condition Generally

Flores is a veteran of the United States Armed Services, having served in the Marine Corps honorably for 20 years.  He served in Vietnam and retired a highly decorated Master Sergeant.  As of the filing of the complaint, he was 61 years old.

Since suffering a stroke in 2003, Flores has been completely paralyzed, unable to move except for his eyes and eyelids.  Although Flores has full cognitive function, he has no control over his body or head.  His body and vocal chords are immobile.

Because of his condition, Flores has at all times a tracheotomy tube running through his neck, an oxygen concentrator running through his tracheotomy, a feeding tube running through his stomach, and a supra-pubic catheter running through his abdomen into his bladder.  According to plaintiff, these devices require constant maintenance by skilled personnel.

---

[1]Although plaintiffs seek class action status, no motion to certify a class is pending.

Flores is also at risk for infection which plaintiff says also requires constant skilled care to prevent.

Flores resides at Crestmont Healthcare Center (Crestmont), a skilled nursing care facility in Fenton, Michigan. Flores has been at Crestmont since April 3, 2004. His treating physician since 2004 has been Dr. Amy Daros, a specialist in geriatric medicine.

### B.  Health Care Coverage for Military

In 1956, Congress established a military health care system to "provid[e] an improved and uniform program of medical and dental care for members of the seven uniformed services and their dependents." Dependents' Medical Care Act, Pub. L. No. 84-569; 1956 U.S.C.A.A.N., p. 1971, 10 U.S.C. § 1071, et seq. The law established a system for contracting health care coverage and for the provision of medical services. See 10 U.S.C. §§ 1074, 1076, 1079.

The Department of Defense (DOD) has implemented regulations for the administration of the DOD health care program, commonly referred to originally as the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), and later as TRICARE. See 32 C.F.R. Part 199. TRICARE administers the DOD health benefit program. The purchases care portion of this health benefit plan, the TRICARE Basic Program, augments the direct care provided by the Uniformed Services in the military treatment facilities, i.e. military hospitals, referred to as "direct medical care system." TRICARE is a statutory program of medical benefits. It is similar to a private insurance program, but does not have a contract guaranteeing indemnification or an insured party against a loss for a premium paid. TRICARE is designed to provide financial assistance

3

to beneficiaries for certain medical care obtained from outside, i.e. civilian sources.

Like all health care plans, there are exclusions from coverage. Under TRICARE, statutorily excluded from coverage is any service "not medically or psychologically necessary to prevent, diagnose, or treat a mental or physical illness, injury, or bodily malfunction. 10 U.S.C. § 1079(a)(13). TRICARE also requires that no benefit be extended without submission of an appropriate, complete, and properly executed claim. 32 C.F.R. § 199.7(a)(2). The provider or beneficiary is responsible for submission of the proper claim. Id.

TRICARE contractors are the primary means of adjudicating and processing claims. When a claim is submitted, a TRICARE contractor makes an initial determination as to coverage. If it is covered, benefits may be paid to the provider or the beneficiary.

TRICARE will cover skilled nursing care (SNC) which is defined generally as follows:

> A medical service that is so inherently complex that is can be safely and effectively performed only by, or under the supervision of, professional or technical personnel.
> A condition that does not ordinarily require skilled services may require them because of special medical complications, Under those circumstances, a service that is usually non-skilled may be considered skilled because it must be performed or supervised by skilled nursing or rehabilitation personnel.

See Plaintiff's Ex. 3, citing 32 C.F.R. § 199.

By contrast, "custodial care," is not covered and is defined as medical treatment or services, regardless of who recommends such treatment or services or where such services treatment or services are provided, that:

(1) Can be rendered safely and reasonably by a person who is not medically

4

skilled; or
(2) Is or are designed to help the patient with activities of daily living.

See id.

### C.  Flores' Claims at Crestmont

Crestmont is an authorized provider of services under TRICARE.  Since 2004,

TRICARE has paid for Flores' skilled nursing care (SNC) at Crestmont.[2]  The trouble

began in 2009.  At some point in 2009, TRICARE denied Crestmont's claim for

reimbursement for SNC for Flores on the apparent grounds his care was custodial.

Plaintiff's attorney requested reconsideration.  On September 21, 2009, Wisconsin

Physicians Service (WPS), a claims processor for TRICARE, wrote to plaintiff's counsel,

reversing the denial of coverage.   The letter states in relevant part:

> The Medical Advisor has reviewed the medical records pertaining to Jos Flores for long term care at Crestmont HNC for the dates of service June 21, 2006 through April 30, 2009.  He has several chronic medical diseases that are stable.
> His medications are in his PEG-tube and none of his medications during his nursing home stay are frequent injections that would require hospitalization or skilled nursing care.
> His qualifying hospital stay was March 4, 2006 through March9, 2006.  The hospitalization from July 20, 2008 through August 1, 2008 is not a qualifying hospital stay being only one day.  His has locked in syndrome and is total care.  He has J-tube and tracheotomy.  He receives occupational therapy, but this is for splinting and is classifies as custodial care due to the splinting and contracture case.  His PEG-tube feedings are the only source of his nutrition and therefore $100 parental feedings his care is skilled.
> The following conclusion case be drawn from the medical records for services from June 21, 2006 through April 30, 2009: Joe Flores was not receiving custodial care according to the Code of Federal Regulations:
> . . .

_____

[2]There appears to be some discrepancy in the record as to when TRICARE assumed payment of SNC for Flores.  The March 16, 2010 denial letter states that Flores was "initially admitted to SNF [sic] on March 1, 2006.  Medicare benefits exhausted on June 30, 2006 and then TRICARE became the primary payer."

> **In summary, the nursing home services received by Joe Flores performed
> from June 21, 2006 through April 30, 2009 were not custodial by TRICARE
> definition and can be covered pers the TRICARE contractual language.
> Benefits will be extended for the impatient long term care provided to this
> patient from August 1, 2008 through April 30, 2009**.

Plaintiff's Ex. 3. (emphasis added).

Crestmont then submitted a claim for reimbursement to TRICARE for SNC

provided from November 1, 2009 through December 30, 2009.  WPS, for TRICARE,

again evaluated the claim.  WPS denied the claim.  It is not clear if the denial letter,

which does not appear to be in the record, was mailed to Flores or Crestmont.  In any

event, by letter dated February 19, 2010, Crestmont advised TRICARE that it was

appealing the decision, contending that Flores is provided SNC, not custodial care.  See

Plaintiff's Ex. 4.

On March 16, 2010, WPS sent a letter to Crestmont, now concluding that the

denial of SNC was proper.  The letter states in relevant part:

> We have received medical records for this SNF stay through January 31,
> 2010,  The records included admit history/physical, physician's orders and
> progress notes, nurse notes, and physical and occupational therapy (PT and OT)
> notes.
> We sent this case back to our Medical Advisor to review SNF stay for April
> 21, 2009-January 31, 2010.  We asked if this long term care was medically
> necessary and appropriate.
> . . .
> Our Medical Advisor has reviewed the submitted records and determined
> that this SNF stay was not medically necessary.  The care was custodial and not
> covered, except for any drugs and supplies. . . .
> The patient has several chronic medical diseases that are stable.  His
> medications are via his PEG and none of his medications during his nursing
> home stay are frequent injections that would require hospitalization or SNC.
> His qualifying hospital stay was March 4, 2006-March 9, 2006.  The hospital stay
> July 30, 2008-August 1, 2008 is not a qualifying stay.  He has locked in
> syndrome and is total care.  He has a J tube and trach. He receives OT from
> April 15, 2009-May 5, 2009, but this is for splinting and is classifies as custodial

6

due to splinting and contracture care.  The Minimum Data Sets (MDS) list one State I ulcer on April 16, 2009, and at this level does not require SNC.  He receives 76-100% parental intake.

Unfortunately, the tube feedings alone do not require 24/7 SNF care or SNC. There is no medical complexity of care that requires 24/7 SNF care.  Prior review periods have been approved based on the feeding tube alone, but this on its own is not criteria for skilled level need.  Upon further review it has been determined that the documentation does not support any specific care requiring the services of skilled professional.  The administration of and care for tube feedings does not requires the services of a registered nurse at this level of care. The service can be rendered safely and reasonably by a person who is not medically skilled, and at a lower level of care.

. . .

Therefore, the services this patient received in SNF for April 21 2009-January 31,2010 were custodial by TRICARE definitions and cannot be covered per the TRICARE contractual language.  The services safely could have been provided at a lower level of care.

Based on our Medical Advisor's medical opinion and rationale, the SNF stay for November 1, 2009-December 31, 2009 shall remain denied as not medically necessary and not covered per TRICARE...

WPS further explained that because Flores could not reasonably have known that the care provided was custodial but Crestmont should have known, Crestmont was responsible for care provided from November 1, 2009 through December 31, 2009. WPS also said that **Flores' liability for care begins on February 10, 2010**.

Flores, through counsel, appealed the March 10, 2010 decision.  Crestmont did not appeal.  On June 3, 2010, the National Quality Monitoring Contractor (NQMC) notified Flores' counsel that is declined to accept the administrative appeal, noting that because Flores was not responsible for paying anything prior to February 10, 2010, there was no amount in dispute.  The June 3, 2010 letter again made clear that Flores is responsible for paying for his care from February 10, 2010 forward.

On May 13, 2011, plaintiffs filed the instant complaint.

Plaintiffs say that Flores has paid for his care at Crestmont, at the cost of $7,000

per month.  His retirement funds are now exhausted and as of April 21, 2011, he owed Crestmont over $20,000 and Crestmont has threatened legal action if a payment arrangement cannot be made.

Plaintiffs have not submitted any other claims for reimbursement of Flores' nursing care.  Flores has made claims for other services since February 10, 2010, including for pharmaceuticals and therapy services.

Crestmont, however, appears to have filed three claims for nursing services for September 2010, November 2010, and April 2011.   According to the affidavit of Ondrea Weisberger at Crestmont, she was later told by Rebecca Chapman at TRICARE that the claims would not be processed and TRICARE would not issue a denial because Flores is in custodial care and it would open the appeal process again.  Weisberger's affidavit and the claim forms are attached as Exhibit 6 to plaintiff's response.

The government submitted Chapman's declaration as Exhibit 4 to its reply. Chapman denies making the statements attributed to her.

### III.  Legal Standard

Rule 12(b)(1) provides for a motion to dismiss for lack of jurisdiction.  In order to defeat a motion under 12(b)(1), the plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is "substantial."  A federal claim is substantial unless "prior decisions inescapably render [it] frivolous."  Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit, 738 F.2d 163, 165 (6th Cir. 1984).  In short, when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made.  Musson Theatrical v. Federal Express Corp., 89 F.3d 1244, 1248 (1996).

### IV.  Analysis

The government argues that the complaint must be dismissed because plaintiffs lack standing.  Plaintiffs say that the court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57, and § 5 U.S.C. § 702, the Administrative Procedure Act (APA) which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof."

Standing is a core component of the case or controversy requirement of Article III of the U.S. Constitution.  See DaimlerChrylser Corp. v. Cuno, 547 U.S. 332, 342 (2006). In order to meet this requirement, a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."   Allen v. Wright, 468 U.S. 737, 751 (1984) .  Courts have referred to the three elements of Article III standing as "injury in fact", "causation," and "redressiblility."  See, e.g., Center for Biological Diversity v. Lueckel, 417 F.3d 532, 536 (6th Cir. 2005).  The Supreme Court has described these elements as follows:  the "injury-in-fact" must be concrete, particularized, and actual or imminent.  (2) the injury is fairly traceable to the conduct of the defendants; and (3) the requested relief would likely redress the injury suffered.  See Friends of the Earth, Inc. v. Laidlaw Env. Services, 528 U.S. 167, 180-181 (2000); see also McConnell v. Fed. Election Comm'n, 540 U.S. 93, 225-26 (2003) (reiterating that "the irreducible constitutional minimum of standing" consists of "an injury in fact, which is concrete, distinct and palpable, and actual or imminent," "a causal connection between the injury and the conduct

9

complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of some third party not before the court," and a "substantial likelihood that the requested relief will remedy the alleged injury in fact") (internal quotes and citations omitted).

The government argues that there is no "adverse" agency action at this point because Flores is not responsible for nursing care services prior to February 10, 2010 and no claims for nursing care services were presented or reviewed for nursing care services provided after February 10, 2010. The government says that any such claims will be evaluated on a case-by-case bases to ensure the claim is a covered benefit. The government says that plaintiffs have an independent opportunity to seek an adjudication of coverage for nursing care after February 10, 2010. However, the government goes on to say that even if plaintiffs or Crestmont "had not opted to forego an adjudication of such claims, [for nursing services provided after February 10, 2010] the claims could not be adjudicated in any event because Crestmont failed to perfect a proper claim for adjudication . . . [b]y submitting claims for non-consecutive months, Crestmont failed to perfect a proper claim for adjudication."

However, at most, the government says that plaintiffs "speculate" that defendants will deny any future claims for reimbursement for SNF care. The government says that such speculation is insufficient injury to confer standing, as it is neither concrete or actual. The government says that only when a claim is presented and denied and plaintiff is harmed can the Court exercise jurisdiction under the APA.

Plaintiffs say that the allegations in the complaint and the government's own documents show a real and concrete injury so as to confer standing.  Plaintiffs say that

10

Flores has suffered actual injury based on TRICARE's March 10, 2010 denial letter indicating that he is financially responsible for nursing care going forward. After TRICARE covered his nursing care for six years, and after having successfully appealed the first denial in 2009, TRICARE's abrupt second denial left Flores and his family in dire financial straits. It has also caused Flores to hire an attorney and try to figure out how to pay for his nursing care.

Plaintiffs have the better argument. In United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669 (1973), the Supreme Court rejected the notion that the injury must be significant or substantial. Rather, "[a] plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action." Id. at 688, 93 S.Ct. 2405. The Supreme Court noted:

> We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, see Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; a $5 fine and costs, see McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); and a $1.50 poll tax, Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).... As Professor Davis has put it: 'The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.' Davis, Standing: Taxpayers and Others, 35 U. Chi. L.Rev. 601, 613. See also K. Davis, Administrative Law Treatise §§ 22.09-5, 22.09-6 (Supp.1970).

Id. at 690 n. 14, 93 S.Ct. 2405. In Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 (1992), the Supreme Court explained that such an injury, if it had not already occurred, must be "imminent," that is, likely to occur immediately.

> Although "imminence" is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes-that the injury is "certainly impending,".... It has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the

11

injury happen are at least partly within the plaintiff's own control. In such circumstances we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.

Here, plaintiffs have alleged a real injury - Flores' financial responsibility for nursing care from February 10, 2010 onward. This is a concrete economic injury sufficient for standing purposes.

While the government says Flores should first submit a claim for nursing services and if it is denied, then he can sue, this suggestion is untenable in light of the record which clearly shows TRICARE now believes Flores' care is custodial. Neither party has suggested, and there are no allegations to the contrary, that Flores' condition will change. TRICARE's rejection of Crestmont's claim for reimbursement was a de facto rejection, i.e., "agency action," of any claim by Flores for skilled nursing care. This shows real injury. See Beeker v. Olszewski, 415 F. Supp. 2d 734, 742 (E.D. Mich. 2006) (holding that plaintiffs who challenged Medicaid policy which caused pharmacies to withhold services to recipients with past due co-payments had standing, noting that "[t]he denial of Medicaid benefits to which an applicant would otherwise be entitled is a cognizable injury for standing purposes.") (citing Hazard v. Shalala, 44 F.3d 399, 403 (6th Cir. 1995).

Here, the Court is only faced with the issue of whether the complaint contains sufficient allegations of an injury to confer standing. It does.

## V.  Conclusion

For the reasons stated above, the government's motion is DENIED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  October 11, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 11, 2011, by electronic and/or ordinary mail.

S/Julie Owens
Case Manager, (313) 234-5160

13