UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOE FLORES, an individual, and
CONSUELO FLORES, as court-appointed
conservator and guardian of JOE FLORES,
as individuals and on behalf of all others
similarly situated,

       Plaintiffs,

vs.                                      Case No. 11-12119

UNITED STATES OF AMERICA,                    HON. AVERN COHN
UNITED STATES DEPARTMENT OF
DEFENSE, TRICARE MANAGEMENT
ACTIVITY, and ROBERT M. GATES,

       Defendants.

_____/


**MEMORANDUM AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REOPEN CASE**
**AND ENTER A FINAL JUDGMENT (Doc. 30)**

I. Introduction

In 2011, plaintiff Consuelo Flores, on behalf of her father, Joe Flores (Flores) and

others,[1] sued to challenge a decision by TRICARE Management Activity (TRICARE), a

managed health care program for members of the uniformed services, retirees, and

their dependents, to stop providing coverage to Flores.  Flores suffers from "Locked-In

Syndrome" which renders him paralyzed in all parts of his body expect for eye and

eyelid movement.  TRICARE denied coverage on the grounds that the care provided to

_____

[1]Plaintiffs sought class action status.  However, no motion to certify a class action
was filed and the case proceeded on an individual basis.  Thus, the Court will  use the
term plaintiff or Flores as appropriate.

Flores was "custodial" and not "skilled nursing care."  Plaintiff sought relief under the Administrative Procedures Act (APA), 5 U.S.C. § 702, as one aggrieved by an agency action, i.e. TRICARE.

As will be explained, on April 5, 2012, the Court entered a stipulated order remanding the matter to TRICARE for further review and agency decision.  (Doc. 29, Remand Order).  Upon entry of the Remand Order as will be explained in detail below, the case was "closed" although neither party requested it be closed.  No judgment entered.  Plaintiff prevailed on remand as TRICARE agreed to provide coverage for Flores' skilled nursing care.

Now, over three years later, plaintiff has moved the Court to reopen the case and enter judgment.  Plaintiff asks for the Court to reopen the case and enter a final judgment which affirms "TRICARE's Formal Review Decision" issued on May 22, 2012.  The motion appears to have been brought primarily so that plaintiff's counsel can file an application for attorney fees under the Equal Access to Justice Act (EAJA), which the time for doing so runs from the time a judgment is entered.

For the reasons that follow, the motion will be granted.

## II.  Background[2]

### A.  Flores' Condition Generally

Flores is a veteran of the United States Armed Services, having served in the Marine Corps honorably for 20 years.  He served in Vietnam and retired a highly decorated Master Sergeant.  As of the filing of the complaint, he was 61 years old.

---

[2]This background is substantially taken from the Court's Memorandum and Order Denying Defendants' Motion to Dismiss (Doc. 19).

2

Since suffering a stroke in 2003, Flores has been completely paralyzed, unable to move except for his eyes and eyelids.  Although Flores has full cognitive function, he has no control over his body or head.  His body and vocal chords are immobile.

Because of his condition, Flores has at all times a tracheotomy tube running through his neck, an oxygen concentrator running through his tracheotomy, a feeding tube running through his stomach, and a supra-pubic catheter running through his abdomen into his bladder.  According to plaintiff, these devices require constant maintenance by skilled personnel.

Flores is also at risk for infection which plaintiff says also requires constant skilled care to prevent.

Flores resides at Crestmont Healthcare Center (Crestmont), a skilled nursing care facility in Fenton, Michigan.  Flores has been at Crestmont since April 3, 2004.  His treating physician since 2004 has been Dr, Amy Daros, a specialist in geriatric medicine.

## B.  Health Care Coverage for Military

In 1956, Congress established a military health care system to "provid[e] an improved and uniform program of medical and dental care for members of the seven uniformed services and their dependents."  Dependents' Medical Care Act, Pub. L. No. 84-569; 1956 U.S.C.A.A.N., p. 1971, 10 U.S.C. § 1071, et seq.  The law established a system for contracting health care coverage and for the provision of medical services. See 10 U.S.C. §§ 1074, 1076, 1079.

The Department of Defense (DOD) has implemented regulations for the administration of the DOD health care program, commonly referred to originally as the

3

Civilian Health and Medical Program of the Uniformed Services (CHAMPUS), and later as TRICARE.  See 32 C.F.R. Part 199.  TRICARE administers the DOD health benefit program.  The purchases care portion of this health benefit plan, the TRICARE Basic Program, augments the direct care provided by the Uniformed Services in the military treatment facilities, i.e. military hospitals, referred to as "direct medical care system."  TRICARE is a statutory program of medical benefits.  It is similar to a private insurance program, but does not have a contract guaranteeing indemnification or an insured party against a loss for a premium paid.  TRICARE is designed to provide financial assistance to beneficiaries for certain medical care obtained from outside, i.e. civilian sources.

Like all health care plans, there are exclusions from coverage.  Under TRICARE, statutorily excluded from coverage is any service "not medically or psychologically necessary to prevent, diagnose, or treat a mental or physical illness, injury, or bodily malfunction.  10 U.S.C. § 1079(a)(13).  TRICARE also requires that no benefit be extended without submission of an appropriate, complete, and properly executed claim.  32 C.F.R. § 199.7(a)(2).  The provider or beneficiary is responsible for submission of the proper claim.  Id.

TRICARE contractors are the primary means of adjudicating and processing claims.  When a claim is submitted, a TRICARE contractor makes an initial determination as to coverage.  If it is covered, benefits may be paid to the provider or the beneficiary.

TRICARE covers skilled nursing care (SNC) which is defined generally as follows:

A medical service that is so inherently complex that is can be safely and

4

effectively performed only by, or under the supervision of, professional or
technical personnel.
A condition that does not ordinarily require skilled services may require them
because of special medical complications, Under those circumstances, a service
that is usually non-skilled may be considered skilled because it must be
performed or supervised by skilled nursing or rehabilitation personnel.

See Plaintiff's Ex. 3, citing 32 C.F.R. § 199.

By contrast, "custodial care," is not covered and is defined as medical treatment

or services, regardless of who recommends such treatment or services or where such

services treatment or services are provided, that:

(1) Can be rendered safely and reasonably by a person who is not medically
skilled; or
(2) Is or are designed to help the patient with activities of daily living.

See id.

C.  Flores' Care at Crestmont

Crestmont is an authorized provider of services under TRICARE.  Since 2004,

TRICARE has paid for Flores' SNC at Crestmont.[3]  Trouble began in 2009.  At some

point in 2009, TRICARE denied Crestmont's claim for reimbursement for SNC for Flores

on the apparent grounds his care was custodial.  Plaintiff's attorney requested

reconsideration.  On September 21, 2009, Wisconsin Physicians Service (WPS), a

claims processor for TRICARE, wrote to plaintiff's counsel, reversing the denial of

coverage.  Crestmont then submitted a claim for reimbursement to TRICARE for SNC

provided from November 1, 2009 through December 30, 2009.  WPS, for TRICARE,

---

[3]There is some discrepancy in the record as to when TRICARE assumed
payment of SNC for Flores.  The March 16, 2010 denial letter states that Flores was
"initially admitted to SNF [sic] on March 1, 2006.  Medicare benefits exhausted on June
30, 2006 and then TRICARE became the primary payer."

5

again evaluated the claim.  WPS denied the claim .  By letter dated February 19, 2010,

Crestmont advised TRICARE that it was appealing the decision, contending that Flores

is provided SNC, not custodial care.  See Plaintiff's Ex. 4.  On March 16, 2010, WPS

sent a letter to Crestmont, upholding the denial of coverage for SNC.

Flores, through counsel, appealed the decision.  Crestmont did not appeal.  On

June 3, 2010, the National Quality Monitoring Contractor (NQMC) notified Flores'

counsel that it declined to accept the administrative appeal, noting that because Flores

was not responsible for paying anything prior to February 10, 2010, there was no

amount in dispute.  The June 3, 2010 letter again made clear that Flores was

responsible for paying for his care from February 10, 2010 forward.

### D.  This Case

On May 13, 2011, plaintiff filed a complaint seeking coverage for SNC.  The

government moved to dismiss on the grounds that plaintiff lacked standing.  On October

11, 2012, the Court denied the motion.  (Doc. 19).  Thereafter, the parties engaged in

settlement discussions.  The settlement culminated in the entry of the Remand Order on

April 5, 2012 to which the parties stipulated.  The Remand Order directed TRICARE to

further review Flores' claim.

Upon further review, TRICARE determined that Flores was entitled to SNC care

from November 1, 2009 to March 31, 2012.  On May 22, 2012, TRICARE issued its

Formal Review Decision memorializing its coverage decision.

Thereafter, however, TRICARE issued denials for skilled nursing care on July 30,

2012 and August 1, 2012.  Eventually, on August 13, 2012, TRICARE again approved

SNC.  According to plaintiff, TRICARE has continued to provide SNC care to Flores

6

since 2012.

On April 9, 2015, plaintiff filed the instant motion.  (Doc. 30).

### III.  Parties' Arguments

Plaintiff says that reopening the case and entering a final judgment is proper because the agency, TRICARE, has completed its task on remand and plaintiff has been given a favorable decision.  Plaintiff also says that given the history of the case of conflicting coverage decisions, it is important to the final outcome of this case to have "the imprimatur of a Court judgment affirming it."  Plaintiff also points out that entry of a judgment is necessary before an application for attorney fees can be filed under the Equal Access to Justice Act.  Finally, plaintiff says that a final judgment is necessary because the case was filed a putative class action.

The government says that the Court lacks jurisdiction to reopen the case and enter judgment.  The Remand Order did not contain any language stating the Court retained jurisdiction.  The government also notes that the action on remand fully resolved all of the claims in the complaint.  The government also says that the fact plaintiff's counsel wants to file a application for attorney fees does not provide a basis for reopening the case because an attorney fee application cannot go forward unless the Court has jurisdiction over the case, and it does not.  Finally, as to plaintiff's class action argument, although plead as a class action, plaintiff never moved to certify a class and no class was certified.

### IV.  Discussion

#### A.

While the Court has discretion to retain jurisdiction over a case pending

7

completion of a remand and to order the filing of progress reports.  See Cobell v.
Norton, 240 F.3d 1081, 1109 (D.C. Cir. 2001), the "norm" is to vacate agency action that
is held to be arbitrary and capricious and remand for further proceedings consistent with
the judicial decision, without retaining oversight over the remand proceedings.  Baystate
Med. Ctr. v. Leavitt, 587 F. Supp. 2d 37, 41-43 (D.D.C. 2008) (declining to retain
jurisdiction over case remanded to agency, and noting that the "norm" is to remand
without retention of jurisdiction).  See also Burlington Resources, Inc. v. FERC, 513
F.3d 242, 251 (D.C. Cir. 2008) (vacating and remanding agency action a second time
for further adjudication without retaining jurisdiction); North Carolina v. EPA, 531 F.3d
896, 929-30 (D.C. Cir. 2008) (vacating agency rule as "fundamentally flawed" and
remanding for further proceedings without retaining jurisdiction); Wedgewood Village
Pharm. v. DEA, 509 F.3d 541, 553 (D.C. Cir. 2007) (vacating agency order and
remanding for further adjudication proceedings without retaining jurisdiction)

     Here, however, the Remand Order says nothing about retaining jurisdiction.
Rather, the Remand Order directs TRICARE to perform another review of Flores' claim
for a specific time period (November 2009 to March 31, 2012).  The Remand Order
contains directions to TRICARE, plaintiff, and Crestmont, as to how to evaluate Flores'
claim as well as dates for TRICARE to issue its decision.  The Remand Order did not
make a determination on the merits, nor grant any of Flores' requested relief.  Rather, it
simply provided for further administrative review of Flores' claims.  Thus, the Court must
look beyond the Remand Order to determine whether the case can be reopened.  As
explained below, there are practical reasons and analogous authority for concluding that
the Remand Order was not a final decision such that the Court can reopen the case and

8

issue a final judgment.

B.

As to the practical reasons, although this case was "closed" upon entry of the Remand Order, the circumstances leading to the closure require some elaboration. Immediately after docketing the Remand Order, the Clerk, through the Court's Case Management/Electronic Case Files system (CM/ECF)[4] entered a "court only" docket entry for "Civil Case Terminated." This entry does not appear on the public docket and the attorneys did not receive notice, electronic or otherwise, of the entry. The entry was done solely for statistical purposes because the Court, within CM/ECF, is required to report all case terminations, including, as in this case, a remand to an agency. However, immediately on entering the "court only" docket entry, CM/ECF automatically changed the docket to say "CLOSED" in the upper right corner of the facing page of docket. Thus, anyone looking at the docket after April 5, 2012 would see that the case was "CLOSED."

However, it is fair to say that the case was not closed in the sense that there was a formal adjudication of the parties' rights. Rather, it was an administrative closure made for statistical purposes. Under these circumstances, it is appropriate to permit plaintiff to now seek a final judgment.

───────────────

[4]The Case Management/Electronic Case Files (CM/ECF) system has been described as "the Federal Judiciary's comprehensive case management system for all bankruptcy, district, and appellate courts. CM/ECF allows courts to accept filings and provides access to filed documents online. CM/ECF gives access to case files by multiple parties, and offers expanded search and reporting capabilities. The system also offers the ability to immediately update dockets and download documents and print them directly from the court system." https://www.pacer.gov/cmecf/ (Last visited June 22, 2015).

C.

As to analogous authority, given that neither the APA nor the TRICARE statute contains provisions regarding a remand procedure or a final judgment, it is instructive to look at case law governing the retention of jurisdiction and entry of a "final judgment" for EAJA purposes in the context of Social Security Act (SSA) remands.  This is so because this case, like a Social Security case, involve agency review of decisions regarding medical conditions.  In <u>Monongahela Valley Hosp., Inc. v. Sullivan</u>, 945 F.2d 576, 584-586 (3d Cir. 1991), the Court of Appeals for the Third Circuit considered whether the district court's remand to an agency regarding a Medicare coverage determination was a "final decision."  In so doing, the court looked to SSA remand decisions.  The court noted that as a Medicare determination, the case was under the framework of the APA.  <u>Id</u>.  However, the court also noted "in contrast to [the SSA], neither [the Medicare statute] nor the APA contains language distinguishing between a judgment accompanied by a remand and a remand for further proceedings to be followed by a judgment."  <u>Id</u>. at 586.  The court said that APA is "silent as to whether and what types of remands to an agency constitute final judgments."  <u>Id</u>.  However, the court held, "as a practical matter," the Medicare statute permits the same types of remands as the SSA, and because "certain remands" under the Medicare statute "may be akin to the remands for further factfinding" discussed in the Supreme Court's case law arising under the SSA, the Medicare remands "must be regarded" the same as such remands under the SSA.  <u>Id</u>. at 586-587.  <u>See also, e.g.</u>, <u>Beechwood Restorative Care Ctr. v. Thompson</u>, 494 F. Supp. 2d 181, 194 (W.D.N.Y. 2007) ("[I]f § 405(g) [of the SSA] does not provide a standard of review for a particular claim, the Court may look to other

10

statutes, such as the APA, for guidance.").

Further, in <u>Lyden v. Howerton</u>, 731 F. Supp. 1545, 1551-52 (S.D. Fla. 1990),
vessel owners and captains who participated in boat lift from Cuba sought attorney fees
under the EAJA for their efforts in challenging seizure of vessels and imposition of fines
by the Immigration and Naturalization Service.  The INS objected in part on the ground
that plaintiffs did not file it within the time prescribed in the EAJA.  The INS argued,
then, that either the district court's decision in 1984, or its order to remand in 1986, or
the administrative agency outcome constitutes a "final judgment" within the meaning of
28 U.S.C. § 2412(d)(1)(B).  The district court rejected this argument, explaining:

> The EAJA waives sovereign immunity, therefore the court must strictly construe
> it.  <u>Haitian Refugee Center v. Meese</u>, 791 F.2d 1489, 1494 (11th Cir.1986).  This
> court lacks jurisdiction only if the application for attorney fees was not filed within
> thirty days of final judgment.  <u>Id</u>.

> According to 28 U.S.C. § 2412(d)(2)(G), a "final judgment means a judgment that
> is final and not appealable and includes an order of settlement." 28 U.S.C. §
> 2412(d)(2)(G).  This court's decision of June 29, 1984, could not constitute a
> "final judgment." That judgment was appealable, and in fact was appealed to the
> Eleventh Circuit.  **In addition, this court's May 15, 1986, order of remand was
> not a final judgment. That order merely provided for further factual
> determinations to be made by INS**.  See <u>Papazian v. Bowen</u>, 856 F.2d 1455,
> 1456 (9th Cir.1988); <u>Finkelstein v. Bowen</u>, 869 F.2d 215 (3d Cir.1989).

<u>Lyden</u>, 731 F. Supp. at 1550-51 (emphasis added).

Here, as in <u>Lyden</u>, the Remand Order was not a final judgment.  Rather, it simply
provided for further factual determinations to be made by TRICARE.  Applying the
analogous SSA, the Remand Order is functionally the same as a "sentence six"
remand.  A sentence-six remand is "an entirely different kind of remand, appropriate
when the district court learns of evidence not in existence or available to the claimant at
the time of the administrative proceeding that might have changed the outcome of that

proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990).  "The district court does

not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to

the correctness of the administrative determination." Melkonyan, 501 U.S. at 98.  In

short, "a sentence-four remand . . . terminates the litigation with victory for the plaintiff,

and a sentence-six remand . . . does not." Shalala v. Schaefer, 509 U.S. 292, 301

(1993).

Here, the Remand Order made no substantive ruling as to the agency's decision,

and was strictly limited to ordering the review of new evidence (a physical examination

and further medical records) that could change the outcome.  Thus, it is appropriate to

construe the Remand Order as sentence-six remand.  So construed, it was not a final

judgment.  In a sentence six remand, "the remanding court continues to retain

jurisdiction over the action within the meaning of the EAJA and may exercise that

jurisdiction to determine if its legal instructions on remand have been followed by the

Secretary." Sullivan v. Hudson, 490 U.S. 877, 887-88 (1989).  "[W]here administrative

proceedings are intimately tied to the resolution of the judicial action and necessary to

the attainment of the results Congress sought to promote by providing for fees, they

should be considered part and parcel of the action for which fees may be awarded." Id.

A "sentence-six remand is considered interlocutory and thus non-appealable." Krishnan

v. Barnhart, 328 F.3d 685, 691 (D.C. Cir. 2003).  "[T]he district court retains jurisdiction

and enters judgment after the remand proceedings are completed." Jackson v. Chater,

99 F.3d 1086, 1089-90 (11th Cir. 1996)

In short, the relief plaintiff seeks is well-taken.  "[T]he window for filing an EAJA

fee application does not open until judgment is entered in the district court following

12

completion of the remand proceedings.  <u>Jackson</u>, 99 F.3d at 1095 (citing <u>Melkonyan v.</u> <u>Sullivan</u>, 501 U.S. 89, 101-02 (1991)).  This conclusion is bolstered by the fact that the complaint made a specific request for attorney fees.  <u>See</u> Complaint at pp. 60-61. Under Fed. R. Civ. P. 54(b), any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Here, plaintiff's attorney fee request remains unajudicated.  Given the Final Agency Decision favorable to Flores, it should now be now ripe for consideration.  In order to accomplish this, the case must be reopened and final judgment issued.

Having found that plaintiff is entitled to the relief is seeks, it is not necessary to address plaintiffs' the alternative argument that she would be entitled to equitable tolling, allowing her counsel to file an EAJA application that would otherwise be untimely.  However, the Court notes that the EAJA is subject to equitable tolling.  <u>See,</u> <u>e.g., Townsend v. Comm'r of Soc. Sec.</u>, 415 F.3d 578, 580, 583 (6th Cir. 2005) ("[T]he EAJA time limitation for fee applications should be subject to equitable tolling.  There is no evidence in the EAJA suggesting that Congress wished to foreclose equitable tolling in this context.").  Other courts have been critical of the government relying on a voluntary remand to contend that the case cannot be reopened.  <u>See, e.g., Jianping Li</u> <u>v. Keisler</u>, 505 F.3d 913, 919-20 (9th Cir. 2007) ("Allowing the government to avoid EAJA fees any time the government voluntarily seeks a remand to address a misapplication of then-prevailing law would neutralize the clear congressional intent that EAJA deter agencies from making those types of errors in the first place."); <u>Lizarraga</u> <u>Customs Broker v. Bureau of Customs & Border Prot</u>., 33 Int'l Trade Rep. (BNA) 2150

13

(Ct. Int'l Trade Oct. 17, 2011) ("Important policy reasons also support allowing EAJA applications to proceed in cases conceded by the government before resolution by a court. . . . The government, therefore, should not be able to avoid liability simply by precluding decisions on the merits."); Foster v. Boorstin, 561 F.2d 340, 343 (D.C. Cir. 1977) ("If the government could avoid liability for fees merely by conceding the cases before final judgment, the impact of the fee provision would be greatly reduced.  The government would remain free to assert boilerplate defenses, and private parties who served the public interest by enforcing the Act's mandates would be deprived of compensation for the undertaking."); Ocasio v. Schweiker, 540 F. Supp. 1320, 1323 (S.D.N.Y. 1982) ("The government's argument . . . would create, with respect to attorneys representing indigent plaintiffs who were denied their just claims by governmental agencies, a no-man's land contrary to clearly expressed congressional purposes manifested in recent statutes intended to encourage legal representation of such persons and in the public interest.").

Finally, the Court declines to address plaintiff's argument that because the case was initially pled as a putative class action, it may be reopened.

In the end, plaintiff has the better view as to the proper interpretation of the Remand Order.  It did not divest the Court from further jurisdiction nor foreclose the Court from taking further action after TRICARE completed the review required on remand.

14

IV.  Conclusion

For the reasons stated above, plaintiff's motion is GRANTED.  The Clerk is directed to reopen the case and restore it to the active docket.

SO ORDERED.

<u>S/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: June 24, 2015
        Detroit, Michigan